# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00429-CR

---

**Richard Dale Griffin, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-16-0125-C, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Richard Dale Griffin was charged with and convicted of one count of continuous trafficking of a person and sixty-three counts of possession of child pornography. *See* Tex. Penal Code §§ 20A.02, .03, 43.26. After a trial, Griffin was sentenced to life imprisonment for the trafficking offense and ten years' imprisonment for each possession offense. *See id.* §§ 12.34, 20A.03(e). In four issues on appeal, Griffin contends that the evidence is insufficient to support his conviction for continuous trafficking and that the trial court erred by denying his motion for a directed verdict, his motion asserting that the trafficking statute is unconstitutionally vague as applied in this case, and his motion to suppress. We will affirm the trial court's judgments of conviction.

### BACKGROUND

When S.S. was in middle school, she and her brother enrolled in karate classes at Griffin's studio. After becoming S.S.'s instructor, Griffin began texting her with the frequency

of those exchanges increasing over time, culminating with Griffin buying S.S. a new cellphone under his service plan. After a few years, Griffin began picking S.S. up from her high school or her home in order to have sex with her in one of his cars, his home, his karate studio, or his travel trailer. S.S. testified that Griffin would pick her up and drive her to those locations, that he had vaginal and oral intercourse with her several times each month over a period of two and a half years, and that there were between twenty and sixty total sexual encounters. During some of these assaults, Griffin took photographs of S.S. while she was naked, and he repeatedly asked S.S. to send him photos of herself naked.

After S.S. told her parents about Griffin's behavior, they contacted the police. During their investigation, the police seized several electronic devices found in Griffin's home, including computers and an iPhone. A search of those devices revealed pornographic images of S.S. and text threads between Griffin and S.S. that were sexual in nature. Before trial, Griffin filed a motion to suppress the evidence obtained from his home, but the trial court denied the motion. At the conclusion of the trial, the jury found Griffin guilty of all the charges.

## DISCUSSION

In his first issue on appeal, Griffin contends that the trial court erred by failing to grant his motion for a directed verdict. In his second issue, Griffin argues that the evidence is legally insufficient to support his conviction for trafficking. In his third issue, Griffin asserts that the trial court erred by denying his motion arguing that portions of the trafficking statute are unconstitutionally vague as applied to him in this case. In his final issue, Griffin insists that the trial court should have granted his suppression motion because the search-warrant affidavit pertaining to the search of his house contained misrepresentations and failed to establish probable cause that evidence of criminal activity would be found at his house. Consistent with

2

Griffin's briefing, we will address his first two issues together because "[a] motion for a directed verdict is a challenge to the legal sufficiency of the evidence" and is reviewed under the same legal-sufficiency standard. *See Salazar v. State*, No. 04-10-00086-CR, 2010 WL 4523785, at *1 (Tex. App.—San Antonio Nov. 10, 2010, no pet.) (mem. op., not designated for publication).

**Motion for Directed Verdict and Sufficiency of the Evidence**

As set out above, Griffin was charged with the continuous trafficking of S.S. Under the relevant provisions of the Penal Code, a person commits continuous trafficking "if, during a period that is 30 or more days in duration, the person engages two or more times in conduct that constitutes an offense under Section 20A.02 [trafficking of persons] against one or more victims." Tex. Penal Code § 20A.03. A person commits a trafficking offense under section 20A.02 "if the person knowingly . . . traffics a child and by any means causes the trafficked child to engage in, or become the victim of" the offenses of indecency with a child, sexual assault, sexual performance by a child, or the promotion of child pornography. *Id.* § 20A.02(a)(7)(B), (C), (I), (K). Under the Penal Code, "[t]raffic" is defined as meaning, among other things, "to transport . . . another person by any means." *Id.* § 20A.01(4).

When briefing his first two issues, Griffin concedes that the evidence established that he "had sexual relations with S.S., a teenager, over the course of two years." However, Griffin contends that the evidence was insufficient and that the trial court erred by denying his motion for a directed verdict because "the evidence did not prove that [he] trafficked S.S." Instead, Griffin asserts that the evidence only showed that he made arrangements "to be alone with S.S. so that he could have sexual relations with her," that S.S. "was not traded or forced into slavery or prostitution," and that she was "abused in ways familiar to the review of ordinary prosecutions for sexual abuse of children." Although Griffin acknowledges that there was

3

evidence establishing that he drove S.S. to different locations to have sex, he asserts that this type of action does not qualify as "transport[ing]" someone under the trafficking statute.

On the contrary, Griffin contends that the structure of the trafficking statutes divides actors into two categories: "[o]ne is the trafficker and the other is the beneficiary." *Compare id.* § 20A.02(a)(1), (3), (5) (criminalizing conduct of trafficking "another person"), *with id.* § 20A.02(a)(2), (4), (6) (explaining that person is culpable if he "receives a benefit"). Building on this premise, Griffin asserts that subsection 20A.02(a)(7) applies to an actor who "traffics a child and . . . causes the trafficked child to engage in" sexual conduct but that subsection 20A.02(a)(8) applies to an individual who "receives a benefit from participating in a venture that involves" the sexual conduct listed in subsection 20A.02(a)(7) "or engaged in sexual conduct with a child trafficked in the manner described" in subsection 20A.02(a)(7). *See id.* § 20A.02(a)(7), (8). Based on his reading of the statute, Griffin insists that he could only have been guilty of trafficking in this case if he "delivered S.S. to a beneficiary who was not himself" and that allowing the trafficking statute to apply to the conduct at issue in this case would "supplant the various statutes criminalizing sex offenses" and effectively render useless the punishment provisions for other sex offenses because the conduct prohibited in those other statutes would fall under the trafficking statute. As further support for this construction, Griffin points to the legislative history for the current version of the trafficking statute and to a version of the statute that did not become law and contends that the legislative history for those statutes demonstrates that the trafficking statute was intended "to criminalize the commercial trade of people, both adults and children, to be used for forced labor or prostitution." Alternatively, Griffin contends that the statute is ambiguous because it is susceptible to more than one

4

understanding and that, therefore, this Court should look to the legislative history to determine which meaning the legislature intended.

For these reasons, Griffin urges that the evidence was insufficient to establish that his conduct constituted continuous trafficking of S.S. and that the trial court erred by denying his motion for a directed verdict.

Although sufficiency challenges generally require appellate courts to "view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt," *see Schneider v. State*, 440 S.W.3d 839, 841 (Tex. App.—Austin 2013, pet. ref'd), "[i]n some cases, . . . a sufficiency-of-the-evidence issue turns on the meaning of the statute under which the defendant has been prosecuted," *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). In other words, for some evidentiary challenges, appellate courts must consider whether "certain conduct actually constitute[s] an offense under the statute with which the defendant has been charged." *Id.* "That question, like all statutory construction questions, is a question of law, which we review *de novo*." *Id.*

"In construing a statute, we give effect to the plain meaning of its language, unless the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended." *Id.*; *see Ex parte Vela*, 460 S.W.3d 610, 612 (Tex. Crim. App. 2015). Stated differently, we may consult extra-textual sources "[o]nly if the statutory language is ambiguous, or leads to absurd results that the Legislature could not have possibly intended." *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011); *see also Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (explaining that if statute's language will lead to absurd results or is ambiguous, "then *and only then*, out of absolute

5

necessity, is it constitutionally permissible for a court to consider . . . *extra*textual factors"). "Extratextual factors include . . . legislative history." *Liverman*, 470 S.W.3d at 836. "In ascertaining the plain meaning of a word, we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); *see* Tex. Gov't Code § 311.011 (addressing common and technical usage of words in construing statutes). "In determining plain meaning, we employ the rules of grammar and usage, and we presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible." *Liverman*, 470 S.W.3d at 836.

In *Ritz v. State*, this Court addressed arguments similar to those made by Griffin regarding the applicability of the trafficking statute in a case in which Ritz allegedly picked up the fourteen-year old victim "on multiple occasions" over a period of time that was more than thirty days in duration and drove her to his house to have sex with her. 481 S.W.3d 383, 386 (Tex. App.—Austin 2015, pet. dism'd). This Court initially explained that the conduct at issue, "however reprehensible" did "not constitute what would ordinarily be considered 'human trafficking' because there were no allegations in this case of organized crime, prostitution, or forced labor" and agreed with Ritz's argument "that the plain language of" the trafficking statute may be "so broad that nearly every adult who has sex with a minor may now be prosecuted as a human trafficker." *See id.*

"Nevertheless," this Court determined that the unambiguous language of the statute "is broad" and included the act of driving the victim to Ritz's "home in order to have sex with her." *See id.* at 386. Furthermore, this Court disagreed with Ritz's assertion that construing the statute to include the type of conduct at issue would lead "to an absurd result that the

6

legislature could not possibly have intended." *Id.* On the contrary, this Court explained that "it is possible that the legislature wished to significantly increase the sentences available for persons who commit sexual crimes involving children by including all such crimes under the 'trafficking' umbrella" or intended to classify that type of behavior "as trafficking because it determined that removing a child from the safety of her own home and driving her miles away to the seclusion of the defendant's home in order to sexually assault her is particularly egregious conduct." *Id.* Accordingly, this Court explained that if "Ritz transported K.D. and caused her to become the victim of indecency with a child or sexual assault, then he committed trafficking of persons, and if he did so more than once during a period of 30 days or more, then he committed continuous trafficking of persons as alleged in the indictment." *Id.* at 385.

Ritz appealed this Court's decision, and the Court of Criminal Appeals initially granted the petition for review before later dismissing it as improvidently granted. *See Ritz v. State*, 533 S.W.3d 302, 303 (Tex. Crim. App. 2017) (per curiam) ("*Ritz II*"). In an opinion disagreeing with the dismissal, the dissent argued that the governing statutes seem to "contemplate[] two culpable actors in a trafficking case that involves a sex offense against a child: (1) the person who delivers the child . . . and (2) the person who commits the sex offense against the child . . . ." *Id.* at 312 (Keller, J., dissenting). Further, the dissent asserted that the statutes are "at least" ambiguous because they are susceptible to the alternative construction that the statutes apply "only when the actor traffics a child and causes the child to be subjected to a sex offense committed by someone other than the actor." *Id.* at 313. Alternatively, the dissent argued that this Court's interpretation would lead to absurd results because our broad interpretation "render[s] superfluous the statutory provisions that assign punishment to most of the sex offenses in the Penal Code because proving those offenses would necessarily prove the

7

offense of trafficking," allows for disparate treatment of defendants accused of similar but slightly different acts, and authorizes harsher penalties for individuals who "entice" a victim to engage in sexual conduct than for individuals who "force[] a child to engage in the conduct." *Id.* at 313-14.

In addition, a concurring opinion was also issued concluding that there was "no room for material improvement on the court of appeals' opinion." *Id.* at 303 (Newell, J., concurring). The concurrence explained that if "the legislature truly envisioned 'two culpable actors' within the same offense when drafting the statute it would have said so" and that the legislature "did not specify that the person engaging in human trafficking in subsection (7) had to be different from the person victimizing the child." *Id.* at 307. Instead, the concurrence reasoned that "[t]he legislature contemplated criminalizing situations where the trafficker engages in both the traffic and the victimization, in addition to situations where the trafficker transports the child without subsequently victimizing her" and focused on "protecting exploited children, not exempting human traffickers from criminal liability for abusing those whom they traffic." *Id.* Moreover, the concurrence concluded that the governing statute is not ambiguous and that the suggestion that it is ambiguous "does not sprint from the text of the statute itself; it comes from reading terms into the statute in order to justify a conclusion that the statute is ambiguous." *Id.* Similarly, the concurrence determined that the construction adopted by this Court would not lead to absurd results because "it was at least possible that our legislature did intend to classify Ritz's conduct as trafficking based upon the plain text of the statute." *Id.* at 309. Further, the concurrence explained that it was unnecessary "to resort to extratextual factors" to resolve the issue. *Id.*

8

In light of our controlling precedent in *Ritz* and the analysis from the concurrence in *Ritz II*, we reject Griffin's arguments asserting that an individual cannot be convicted under the trafficking statute if he engages in the trafficking and the sexual assault of a victim and that construing the statute as applying in the circumstances present in this case will lead to absurd results. The unambiguous language of the statute allows for convictions in which the person trafficking an individual is also the person who sexually assaults or otherwise victimizes the individual. *See* Tex. Penal Code §§ 20A.01(4), .02(a)(7). Although we recognize the concerns expressed by the dissent in *Ritz II* and in our prior opinion in *Ritz* regarding applying the trafficking statute to circumstances like those present here, we do not believe that application of the statute in these circumstances is something the legislature could not have possibly intended. *See Ex parte Vela*, 460 S.W.3d at 612; *Ritz*, 481 S.W.3d at 386; *see also McKinney v. State*, 177 S.W.3d 186, 205 n.15 (Tex. App.—Houston [1st Dist.] 2005) (recognizing that dissent is not binding precedent), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006). Accordingly, it is unnecessary to consider the extratextual legislative history on which Griffin heavily relies. *See Ritz II*, 533 S.W.3d at 309 (Newell, J., concurring); *Harris*, 359 S.W.3d at 629.

In this case, evidence was presented at trial establishing that Griffin drove S.S. to different locations to have sex with her between twenty and sixty times, that Griffin took photos of S.S. naked during some of those encounters, that Griffin encouraged S.S. to send him photos of herself naked, and that the sexual encounters occurred over a two-and-a-half year period. Viewing the evidence in the light most favorable to Griffin's conviction, we conclude that a rational jury could have determined that Griffin transported S.S. by driving her to different locations, that Griffin caused S.S. to become the victim of conduct enumerated in section 20A.02(a)(7) of the Penal Code, and that he engaged in the trafficking on more than one

9

occasion in a period of thirty days or more. *See* Tex. Penal Code §§ 20A.01(4), .02(a)(7), 21.11, 22.011(a)(2)(A), 43.25, .26; *see also Transport*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/transport (defining "transport" as meaning "to transfer or convey from one place to another"). Accordingly, we conclude that the evidence is legally sufficient to support Griffin's conviction under the trafficking statute and that the trial court did not err by overruling his request for a directed verdict. *Cf. Hines v. State*, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002) (determining that appellate court "erred by resorting to extra-textual factors" because statute's language was unambiguous and because application of plain meaning did "not lead to absurd results").

For these reasons, we overrule Griffin's first and second issues on appeal.

**Constitutionality of Section 20A.02**

In his third issue on appeal, Griffin contends that the trial court erred by denying his motion arguing that section 20A.02 of the Penal Code is unconstitutionally vague as applied to him and that, therefore, this Court should reverse his trafficking conviction and order "the entry of an acquittal." When presenting his constitutional challenge, Griffin acknowledges that he "had fair notice that his conduct was prohibited under the relevant" statutes prohibiting indecency with a child, sexual assault, and possession or promotion of child pornography; however, he insists that a reasonable person would not be on notice that the type of conduct at issue here "would also constitute trafficking." As support for this assertion, Griffin asserts that the purpose of the trafficking statute is to prevent "the exploitation of people for profit through forced labor and prostitution"; urges that his "motivation was not profit, but sex"; and insists that S.S. was, therefore, not trafficked. Further, Griffin contends that the governing statutes, law-enforcement strategies aimed at preventing the exploitation of people, and the common

10

meaning for "trafficking" all demonstrate that reasonable people "would not regard [his] conduct as trafficking." *Cf. Traffic*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/trafficking (defining "traffic" as meaning "illegal or disreputable usually commercial activity"). Moreover, Griffin contends that very few prosecutors have applied the trafficking statute to circumstances like those present here, which he contends "underscores why" the "exploitation" of the trafficking statute in this case was unconstitutional. Finally, Griffin urges that the statute arbitrarily allows prosecutors to convert a sexual-abuse case into a trafficking case if the victim was moved in any manner.[1]

A claim that a statute is unconstitutional "as applied" is an argument that the statute is generally constitutional but operated unconstitutionally to the defendant due to his particular facts and circumstances. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (orig. proceeding). A statute may be valid when applied to one set of facts but invalid when applied to another set of facts. *Id.* Appellate courts review a constitutional challenge to a statute de novo. *Vandyke v. State*, 538 S.W.3d 561, 570 (Tex. Crim. App. 2017). Generally speaking, the party presenting the constitutional challenge bears the burden of

---

[1] In his brief, Griffin contends that the trafficking statutes have been "weaponized" by one district attorney's office and that the absence of cases from other counties demonstrates that the statute is being applied in a capricious manner. However, we note that several of our sister courts of appeals have affirmed trafficking convictions regarding similar allegations. *See Thacker v. State*, No. 08-18-00085-CR, 2020 WL 1303555, at *1, *14 (Tex. App.—El Paso Mar. 19, 2020, pet. ref'd) (op., not designated for publication) (upholding trafficking conviction where defendant allegedly took minor to hotel to have sex with her); *Benavides v. State*, No. 04-18-00273-CR, 2019 WL 5580260, at *1, *6 (Tex. App.—San Antonio Oct. 30, 2019, pet. ref'd) (mem. op., not designated for publication) (affirming trafficking conviction for defendant attorney who drove several women to motel where defendant forced them to have sex with him in exchange for legal services); *Alvarenga-Sarmiento v. State*, No. 09-15-00125-CR, 2017 WL 1025867, at *1, *6 (Tex. App.—Beaumont Mar. 5, 2017, pet. ref'd) (mem. op., not designated for publication) (upholding trafficking conviction where defendant allegedly drove minor to hotel to attempt "to have sexual intercourse"); *Kuhl v. State*, 497 S.W.3d 128, 129, 131 (Tex. App.—Texarkana 2016, no pet.) (affirming trafficking conviction where defendant was alleged to have driven fourteen-year-old girl to another county to "engage in several sex acts with her").

11

showing that the statute is unconstitutional. *Id.* at 570-71. Appellate courts presume that the statute is constitutional and that the Legislature has not acted arbitrarily or unreasonably. *Id.* at 570; *see* Tex. Gov't Code § 311.021 (stating that courts presume "compliance" with Texas and United States Constitutions). "A statute may be challenged as unduly vague . . . if it does not: (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) establish definite guidelines for law enforcement." *Scott v. State*, 322 S.W.3d 662, 665 n.2 (Tex. Crim. App. 2010), *abrogated on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014); *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (explaining that statute is vague when its prohibitions are not clearly defined). "A criminal statute need not be mathematically precise; it need only give fair warning in light of common understanding and practices." *McMillian v. State*, 388 S.W.3d 866, 873 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "A statute is unconstitutionally vague only when no core of prohibited activity is defined." *Id.*

"A statute satisfies vagueness requirements if the statutory language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" *Wagner v. State*, 539 S.W.3d 298, 314 (Tex. Crim. App. 2018) (quoting *Jordan v. De George*, 341 U.S. 223, 231-32 (1951)). A statute is not unconstitutionally vague simply because the words used in the statute are not defined. *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). If the statute does not define its words, appellate courts "give the words their plain meaning unless the language is ambiguous or would lead to absurd results." *Ex parte Barrett*, 608 S.W.3d 80, 97 (Tex. App.—Dallas 2020, pet. filed). "[A] scienter requirement in the statute may sometimes alleviate vagueness concerns." *State v. Doyal*, 589 S.W.3d 136, 146 (Tex. Crim. App. 2019).

Recently, one of our sister courts of appeals addressed an as-applied vagueness challenge to the trafficking statute. *See Benavides v. State*, No. 04-18-00273-CR, 2019 WL 5580260 (Tex. App.—San Antonio Oct. 30, 2019, pet. ref'd) (mem. op., not designated for publication). In that case, Benavides was charged with continuous trafficking of persons for driving multiple women to a motel to force them to have sex with him in exchange for legal services. *Id.* at *1. On appeal, Benavides argued that the trafficking statute was "unconstitutionally vague as applied to him" because it turned "his incidental action of driving each woman to the motel where they were forced to have sex into the offense of 'continuous trafficking'" and because the application of the statute to his circumstances departed "from the traditional understanding of 'human trafficking' and [wa]s contrary to the Legislature's intent." *Id.* at *5.

Ultimately, our sister court overruled Benavides's as-applied challenge. *Id.* at *6. In its analysis, our sister court explained that "the statute clearly prohibits a person from transporting another person with the intent that the transported person engage in forced services," highlighted that "[t]he Legislature defined the term 'traffic' to include transporting a person," and reasoned that "[a]n act like driving falls within the plain meaning of the term 'transport.'" *Id.* at *5. Based on the preceding, the court determined that "a person of ordinary intelligence is placed on notice that driving another person with the intent to force the other person to engage in prostitution more than once during a period of 30 days constitutes the offense of continuous trafficking" and "that the Legislature did not act unreasonably in including the driving of another person to a location with the intent to force that person to engage in sex in the definition of trafficking." *Id.*

13

Although some provisions at issue in *Benavides* are different from those at issue in this case in that *Benavides* involved forced labor or services, *id.*; *see* Tex. Penal Code § 20A.02, we find the analysis persuasive. The statutes at issue here clearly prohibit someone from knowingly transporting a child more than once over a period of time that is thirty days or longer and causing the child to then engage in or become a victim of, among others, the following offenses: indecency with a child, sexual assault, sexual performance of a child, or promotion of child pornography. Tex. Penal Code §§ 20A.02(a)(7), .03(a). Moreover, we agree with our sister court that driving falls within the plain meaning of the term "transport." *See id.* § 20A.01(4); *Benavides*, 2019 WL 5580260, at *5. Accordingly, a person of ordinary intelligence is placed on notice from the plain wording of the statutes that someone who knowingly drives a child and then causes that child to be the victim of one of the offenses set out above is guilty of the offense of continuous trafficking if he performs these acts more than once during a period of time that is thirty or more days in length. *See Benavides*, 2019 WL 5580260, at *5. And the evidence in this case established that Griffin drove S.S. to different locations during a period of more than two years in order to sexually assault her, engage in indecency with a minor by causing her to engage in sexual contact, promote a sexual performance by S.S., and promote child pornography depicting S.S. *See* Tex. Penal Code § 20A.02(a)(7); *see also Kuhl v. State*, 497 S.W.3d 128, 129, 131 (Tex. App.—Texarkana 2016, no pet.) (stating that evidence from trial established that Kuhl "drove . . . a fourteen-year-old girl . . . to a motel . . . and engaged in several sex acts with her" and concluding that Kuhl "failed to show that" trafficking statute was "unconstitutionally vague as to his conduct").

In addition, the clear language of the trafficking provisions at issue adequately details the prohibited behavior so that enforcement of the statutory provisions is not left to the

14

subjective interpretation of law-enforcement officials, provides sufficient guidance to law-enforcement officials, and does not "encourage arbitrary and discriminatory enforcement." *See McMillian*, 388 S.W.3d at 874. The statutory provisions include a culpable-mental-state requirement by requiring that the individual act "knowingly" when committing the offense. Tex. Penal Code § 20A.02(a). That inclusion limits prosecutorial discretion and helps minimize vagueness concerns. *See McFadden v. United States*, 576 U.S. 186, 197 (2015); *see also Ex parte Barrett*, 608 S.W.3d at 96 (explaining that by "imposing the scienter requirement that the trafficking conduct be done knowingly and with intent, the statute excludes the possibility that innocent acts of transportation could be construed as 'trafficking' a child"). Further, the statutes provide a list of the sexually-related conduct that is prohibited, instruct that an offense occurs only when an offender "traffics a child," and set out a definition for "traffic." *See* Tex. Penal Code §§ 20A.01(4), .02(a)(7). Additionally, the statutes require that the offender have engaged in two or more of the sexually-related offenses during a period of time that is "30 or more days in duration." *See id.* § 20A.03(a).[2]

In light of the preceding, we conclude that Griffin failed to show that the provisions of the trafficking statute at issue are unconstitutionally vague as applied to him and

---

[2] As support for his assertion that the trafficking statute affords prosecutors improper and unfettered discretion, Griffin points to *Smith v. Goguen*, 415 U.S. 566 (1974), and *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). We find those cases to be distinguishable. In *Smith*, the defendant was convicted under a statute criminalizing conduct that "defaces or treats contemptuously the flag of the United States," and the Supreme Court determined that the statutory language "fails to draw reasonably clear lines between the kinds of nonceremonial treatment that are criminal and those that are not" and "allows policemen, prosecutors, and juries to pursue their predilections." 415 U.S. at 568-69, 574, 575. In *Papachristou*, the Supreme Court determined that the vagrancy statutes at issue were unconstitutionally vague because the list of prohibited conduct was "all-inclusive and generalized" and gave police "unfettered discretion" in determining when a violation had occurred. 405 U.S. at 166, 168. In contrast here, as set out above, the relevant provisions adequately describe the prohibited behavior and provide guidance to law-enforcement officials to avoid arbitrary enforcement. *See* Tex. Penal Code §§ 20A.01(4), .02(a)(7).

that the trial court erred by denying his motion for directed verdict. Accordingly, we overrule Griffin's third issue on appeal.

**Suppression Ruling**

In his final issue on appeal, Griffin presents several sets of arguments challenging the propriety of the trial court's ruling on his suppression motion. First, Griffin contends that the affidavit for the search warrant of his home contained material misrepresentations that should have been excised when the trial court considered whether the affidavit established probable cause that evidence of criminal activity would be found at his home and that without those misrepresentations, the affidavit failed to establish probable cause. Alternatively, Griffin asserts that regardless of any alleged misrepresentations, the search-warrant affidavit "failed to set forth facts sufficient to establish probable cause that evidence would be located at" his home.

*Search Warrant Affidavit and Suppression Ruling*

In the search-warrant affidavit at issue, Officer Lenny Martinez stated that the home to be searched was located at "125 Lazy L Lane in Wimberly, Texas 78676," identified Griffin as the owner of the house, related that Griffin was in charge of and in control of the property at the listed address, provided a detailed description of the property, and explained that inside the home there was evidence of the offenses of sexual abuse of a child and possession of child pornography. Further, the affidavit explained that sixteen-year old S.S. made an "outcry" stating that her karate instructor Griffin had asked to marry her and that S.S.'s mother reported the matter to the police. Moreover, the affidavit related that Officer Martinez observed S.S.'s forensic interview at the Children's Advocacy Center, that S.S. "was qualified" during the interview and knew "the difference between a truth and a lie," and that S.S. stated during the

16

interview that she started taking classes from Griffin when she was twelve years old, explained that "the relationship" started two years and five months before the affidavit was prepared, and stated that the relationship lasted for two years. Additionally, the affidavit related that S.S. told the interviewer that Griffin provided "her gifts such as money, cell phone, and jewelry" and that the two of them had "sexual intercourse with one another" on "numerous occasions" in her home, cabins behind her school, his home, and his karate studio. When respectively discussing Griffin's address and karate studio, the affidavit included the phrases "which will be 125 Lazy L Lane in Wimberley, Texas" and "will be 10330 Ranch Road 12 in Wimberly, Texas." The affidavit also mentioned that Officer Martinez confirmed that the name of the karate studio is "Sim Soo Karate." Finally, the affidavit stated that S.S. told the interviewer that "each time they engaged in sexual intercourse, Mr. Griffin would take photographs of her in the nude and sometimes would video record her" and that Griffin "claimed to be an artist and enjoyed viewing the nude pictures of her."

After the search warrant was executed and after items were recovered from Griffin's home and other locations, he filed a motion to suppress the evidence, arguing that the search-warrant affidavit did not establish probable cause and that there was a misrepresentation in the affidavit regarding whether S.S. knew the address of Griffin's home. During a suppression hearing, Officer Martinez testified that although S.S. described Griffin's home in detail during her forensic interview and also mentioned that Griffin lived on Lazy L Lane, she was not familiar with the numeric portion of Griffin's address and also stated during the interview that Griffin lived at "275" Lazy L Lane rather than 125 Lazy L Lane. Further, Officer Martinez explained that another officer involved in the investigation, Officer Danny Dufur, provided him with the full address for Griffin's home, but Officer Martinez admitted that he did not describe

17

the source of the information in the affidavit. Additionally, Officer Martinez related that although he included the phrase "which will be 125 Lazy L Lane in Wimberley, Texas," in the portion of the affidavit summarizing S.S.'s statements during the forensic interview, he did not do so to mislead the magistrate into believing that S.S. told the police Griffin's address.

Following the suppression hearing, the trial court denied the motion to suppress and issued findings of fact and conclusions of law supporting its ruling.

*Representations in the Affidavit*

In his first set of arguments challenging the suppression ruling, Griffin agrees that based on the language of the four corners of the affidavit, "[a] magistrate would be justified to infer that [Officer] Martinez had probable cause to believe that 125 Lazy L Lane was Appellant's home where he had sexual intercourse with S.S." However, Griffin insists that there is a "deliberate and material falsehood" in the affidavit and that once "the falsehood is removed, the affidavit lacks probable cause." *See Franks v. Delaware*, 438 U.S. 154, 156 (1978). Specifically, Griffin contends that the affidavit improperly relates that S.S. stated that Griffin's home was at 125 Lazy L Lane when the record from the suppression hearing shows that S.S. actually stated that the home was located at 275 Lazy Lane. Further, Griffin contends that "[w]ithout this false inference, there is nothing in the affidavit that even hints at how [Officer Martinez] concluded that 125 Lazy L Lane was . . . Griffin's house" or at why evidence of the alleged criminal misconduct would be at 125 Lazy L Lane.[3]

---

[3] In its brief, the State contends that Griffin failed to preserve his appellate arguments under *Franks* because he did not request a ruling on this issue. *See Harris v. State*, 227 S.W.3d 83, 85-86 (Tex. Crim. App. 2007); *McMurphy v. State*, No. 03-15-00246-CR, 2016 WL 690995, at *3-4 (Tex. App.—Austin Feb. 19, 2016, pet. ref'd) (mem. op., not designated for publication). Given that Griffin's suppression motion presented argument regarding *Franks*, that Griffin also mentioned *Franks* during the suppression hearing, and that the trial court made findings and

Under *Franks*, if a defendant makes a preliminary showing that a false statement was included in a search-warrant affidavit and that the false statement was necessary to the establishment of probable cause, the trial court should convene a hearing on the issue if the defendant requests one. *Id.* at 155-56. "At a *Franks* hearing, it is the defendant's burden to prove the alleged perjury or reckless disregard for the truth by a preponderance of the evidence." *Emack v. State*, 354 S.W.3d 828, 838 (Tex. App.—Austin 2011, no pet.). If the defendant satisfies this burden and if the remainder of the affidavit is not sufficient to establish probable cause, the fruits of the search must be suppressed "to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156. "We review the trial court's ruling on a *Franks* issue under the same standard applied to search and seizure issues generally: we give almost total deference to the court's rulings on questions of historical fact and mixed questions of law and fact that turn on an evaluation of credibility and demeanor, but we review de novo the trial court's application of the law to those facts." *Emack*, 354 S.W.3d at 838. Although the Fourth Amendment requires a truthful factual showing for determining probable cause, that requirement does not mean that each recited fact has to be precisely accurate, "for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks*, 438 U.S. at 164-65. "Rather, 'truthful' in this context means that the information put forth in the affidavit is believed or appropriately accepted by the affiant as true." *Sponsler v. State*, No. 03-11-00654-CR, 2013 WL 6002763, at *6 (Tex. App.—Austin Nov. 8, 2013, pet. ref'd) (mem. op., not designated for publication).

---

conclusions bearing upon a *Franks* analysis, we will assume that this issue has been preserved for appellate review.

When the trial court issued findings of fact and conclusions of law after making its suppression ruling, it found that S.S. stated during her interview that Griffin lived on Lazy L Lane. The trial court also found credible Officer Martinez's testimony, including his testimony that he was not intending to mislead the magistrate when he listed Griffin's address in the portion of the affidavit summarizing S.S.'s forensic interview, and further found that the inclusion of the statement was not an attempt to mislead the magistrate into believing that S.S. provided the numeric portion of Griffin's address. Moreover, the trial court found that Officer Dufur learned that Griffin lived at 125 Lazy L Lane during his investigation and then related that information to Officer Martinez before Officer Martinez prepared the search-warrant affidavit. Those findings are supported by the testimony provided during the suppression hearing.

In light of the trial court's findings regarding the credibility of Officer Martinez's testimony and his motivations in including the disputed language as well as the finding explaining how Officer Martinez discovered Griffin's address, we conclude that the record supports the trial court's determination that Griffin failed to show that Officer Martinez intentionally, knowingly, or with reckless disregard for its truth included a false statement inside the search-warrant affidavit. Accordingly, the trial court did not abuse its discretion by refusing to suppress the evidence at issue based on the inclusion of the allegedly erroneous statement in the affidavit.

*Probable Cause*

In his next set of arguments, Griffin contends that the search-warrant affidavit failed to establish probable cause because it failed to link the place to be searched to him. More specifically, Griffin contends that the language from the affidavit stating that Griffin and S.S. engaged in sexual activity "at Mr. Griffin's residence which will be 125 Lazy L Lane" can

20

only be read to assert that "Mr. Griffin's residence is 125 Lazy L Lane" but "is a sourceless conclusion made by the affiant" or "at best a future-sense declaration that [his] home will one day be 125 Lazy L Lane, with nothing to support its free-standing prophecy." Further, Griffin asserts that the additional language in the affidavit stating that Griffin was in charge of and in control of the property does not cure the error because that additional statement is also a conclusory statement without any attributable source and is not vouched for. Additionally, Griffin contends that the information in the affidavit was stale and provided "no reason to believe that [he] lived at 125 Lazy L Lane at the time he allegedly had sexual relations with S.S." More specifically, Griffin asserts that the affidavit "says nothing about when 125 Lazy L Lane became [his] home or that this address was the place where he had sexual intercourse with S.S."[4]

"Both the Federal and the Texas Constitutions dictate that no search warrants may be issued without probable cause." *Kennedy v. State*, 338 S.W.3d 84, 91 (Tex. App.—Austin 2011, no pet.) (citing U.S. Const. amend. IV; Tex. Const. art. I, § 9); *see also* Tex. Code Crim. Proc. art. 18.01(b) (providing that "[n]o search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance"). "When determining whether probable cause exists to issue a search warrant, courts should be mindful of the proposition that there is a 'strong preference for searches conducted pursuant to a warrant' over searches conducted without a warrant." *Kennedy*, 338 S.W.3d at 91 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). "Because of the preference to be given search warrants, a search incident to a warrant may be upheld in

---

[4] As support for his arguments, Griffin points to testimony from the suppression hearing that he contends contradicts some of the inferences that the trial court determined the magistrate could have made when the trial court denied his motion to suppress. However, when addressing Griffin's arguments that the affidavit did not establish probable cause, we are limited to considering the language found within the four corners of the affidavit that the magistrate considered. *See Kennedy v. State*, 338 S.W.3d 84, 91-92 (Tex. App.—Austin 2011, no pet.).

doubtful or marginal cases in which a search without a warrant would be unsustainable." *Id.*; *see also Gates*, 462 U.S. at 240 (explaining that preference for warrants is based on idea that it is better practice to allow neutral magistrate to review evidence rather than officers engaged in competitive field of crime fighting). Accordingly, "[s]earches justified by a valid warrant have a presumption of legality unless the opponent produces evidence rebutting the presumption of proper police conduct." *Pacheco v. State*, 347 S.W.3d 849, 855 (Tex. App.—Fort Worth 2011, no pet.).

"When determining whether probable cause exists, courts should consider the totality of the circumstances" and should rely on the facts found within the four corners of the accompanying affidavit. *Kennedy*, 338 S.W.3d at 91-92. Reviewing courts should not apply a "rigid application of the rules concerning warrants" and should instead "review technical discrepancies" in the "issuance and execution of the warrant" "with a judicious eye"; "[t]o do otherwise would defeat the purpose behind the warrant requirement, and provide protection for those to whom the issue on appeal is not one based upon the substantive issue of probable cause but of technical default by the State." *Green v. State*, 799 S.W.2d 756, 757-58 (Tex. Crim. App. 1990). Moreover, "when construing the language contained within affidavits and search warrants, courts 'must do so in a common sense and realistic fashion and avoid hypertechnical analysis.'" *State v. Redd*, Nos. 03-13-00424—00425-CR, 2015 WL 9459776, at *4 (Tex. App.—Austin Dec. 16, 2015, no pet.) (mem. op., not designated for publication) (quoting *Faulkner v. State*, 537 S.W.2d 742, 744 (Tex. Crim. App. 1976)). "As part of their probable-cause assessment, magistrates are permitted to make reasonable inferences from the information in the affidavit." *Kennedy*, 338 S.W.3d at 92. "Ultimately, the magistrate must determine whether 'given all the circumstances set forth in the affidavit before him, including the

22

"veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 238).

To be proper, the accompanying affidavit must provide enough information to allow a magistrate to determine if probable cause exists and to ensure that the magistrate's determination is not "a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239; *see Franks*, 438 U.S. at 165 (explaining that affidavit "must set forth particular facts and circumstances underlying the existence of probable cause" that allow "magistrate to make an independent evaluation of the matter"). "[T]here must be a nexus between the items sought to be seized and the alleged criminal behavior." *Kennedy*, 338 S.W.3d at 92. "That nexus is automatically established when the items sought are contraband or the fruits obtained from or the instruments used in the criminal activity at issue." *Id.*

"In addition to the above requirements, to establish probable cause, the information contained in a warrant's accompanying affidavit must not be stale." *Id.* at 93. "In other words, the facts contained in the affidavit must have occurred recently enough to allow the magistrate to conclude that probable cause exists at the time that the warrant is requested and ultimately issued." *Id.*; *see also McKissick v. State*, 209 S.W.3d 205, 214 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (explaining that when determining whether information in affidavit is stale, courts should examine "the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued"). "Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

23

"Although the passage of time should be considered when determining if the information in an affidavit is stale, the amount of time passed is less significant if the affidavit contains facts showing 'activity of a protracted and continuous nature, i.e., a course of conduct.'" *Kennedy*, 338 S.W.3d at 93 (quoting *McKissick*, 209 S.W.3d at 214). "In addition, a determination regarding whether the information in an affidavit is stale should also involve consideration of the type of property to be seized and the probability that the property may have been relocated." *Id.*

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). Moreover, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). When reviewing a magistrate's probable-cause determination, the reviewing court employs a "highly deferential standard," *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007), and should uphold a determination of probable cause provided that the magistrate had a "'substantial basis'" from which he could conclude that a "search would uncover evidence of wrongdoing," *Gates*, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Although the affidavit does not explicitly set out how Officer Martinez learned that Griffin's address was 125 Lazy L Lane, the affidavit contains several statements regarding the home. For example, where the affidavit first mentions the address, Officer Martinez also included a detailed description of the house, including stating the color of the house, the material it is made of, the shape of its driveway, the relative location to the nearest road, and the presence of an electric gate. In addition, where the affidavit states that Griffin is in charge of and in control of the residence, Officer Martinez included Griffin's date of birth and driver's license number. Moreover, the affidavit specifies that in the forensic interview S.S. described Griffin's home and related that she spent the night and "engaged in sexual intercourse" at his home. Furthermore, although the affidavit stated that Griffin's residence "will be 125 Lazy L Lane," Officer Martinez used this same type of phrasing when listing the address for Griffin's karate studio, when identifying the name of the karate studio, and when describing the appearance of the residence. In the portions of the affidavit discussing the karate studio, Officer Martinez explained that he "confirmed the proper name of the karate studio." The affidavit also specified that Officer Martinez had been a police officer for more than 20 years when he filled out the affidavit, that he investigated felony cases, that he had received training in felony investigations, and that he had specifically received training in sexual-abuse investigations.

When denying Griffin's suppression motion, the trial court determined that the magistrate could have made several reasonable inferences based on the language of the affidavit. For example, the trial court concluded that based on the portions of the affidavit describing Officer Martinez's "tenure, experience, and current duties," the magistrate could have reasonably inferred that Officer "Martinez could have identified 125 Lazy L Lane as the Defendant's residence from county or public records" and that Officer Martinez's use of the phrase "'will be

25

125 Lazy L Lane' means that such an investigation was conducted by" him. These inferences are supported by Officer Martinez's description of his training and experience in similar cases, his efforts to confirm the information that he had been given during the investigation (e.g., verifying the name of the studio), and his use of Griffin's driver's license in the investigation, and the second inference regarding Officer Martinez's intent when using the phrase "will be 125 Lazy L Lane" is supported by Officer Martinez's use of similarly worded phrases in other portions of the affidavit when describing the property, the address of Griffin's karate studio, and the name of his karate studio. Additionally, the magistrate could have reasonably inferred from Officer Martinez's description of the property that he drove to the property as part of his investigation. *Cf. Rodriguez*, 232 S.W.3d at 61 (explaining that "[w]hen in doubt," reviewing courts "defer to all reasonable inferences that the magistrate could have made"). Further, the magistrate could have inferred from the affidavit that Officer Martinez's observation and description of the property matched the description of the home given by S.S. during her forensic interview.

Reviewing the affidavit in a nonrigid and common-sense manner, these inferences linking Griffin to the listed address are reasonable based on the language contained in the four corners of the affidavit. *See Wrinkle v. State*, No. 04-17-00715-CR, 2018 WL 6793529, at *6 (Tex. App.—San Antonio Dec. 27, 2018, no pet.) (mem. op., not designated for publication) (explaining that magistrate could have reasonably inferred that property was defendant's home where affidavit stated that defendant slept at property, listed address for property, averred that defendant had control over property, and described property); *Aguirre v. State*, 490 S.W.3d 102, 112-13 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (concluding that magistrate could have reasonably inferred that defendant resided at location to be searched and that registration

26

information for vehicle linking defendant to home "was available to the detective as a police officer" where affidavit averred that place was "'in the charge [of], controlled by, or used by'" defendant, provided description of vehicles owned by defendant, and stated that vehicle was registered to address to be searched even though affidavit "did not expressly refer to the place to be searched as appellant's residence").  Moreover, the language of the affidavit along with these reasonable inferences established a nexus between Griffin's alleged criminal conduct and the property to be searched.  *See Kennedy*, 338 S.W.3d at 92; *see also United States v. Procopio*, 88 F.3d 21, 28 (1st Cir. 1996) (explaining that "[t]he focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at his home or business" and that address is not "unimportant" but stating that "so long as the affidavit itself asserts a link between the suspect and the address, it is easy to understand how both the officer applying for the warrant and the magistrate might overlook a lack of detail on a point often established by the telephone book or the name on a mailbox").[5]

---

[5] As support for his argument that the affidavit failed to link him to the address to be searched, Griffin refers to cases from other states and from the Sixth, Tenth, and Eleventh Circuit federal courts that he contends supports his appellate claims, but those cases are not binding on this Court because Texas appellate courts are only obligated to follow decisions by higher Texas courts and the United States Supreme Court.  *See Jeffery v. State*, 169 S.W.3d 439, 443 n.1 (Tex. App.—Texarkana 2005, pet. ref'd).  In any event, we believe those cases are distinguishable.

In his brief, Griffin also refers to cases from the United States Supreme Court, the Court of Criminal Appeals, and one of our sister courts of appeals, but we believe these cases are also distinguishable.  In *Aguilar v. Texas* and *Nathanson v. United States*, the Supreme Court concluded that the affidavits at issue were insufficient to establish probable cause, but the affidavits in those cases did not provide the type of detail present in this case.  378 U.S. 108, 109, 114, 116 (1964) (concluding that affidavit stating that "[a]ffiants have received reliable information from a credible person and do believe" that narcotics were "being kept at the above described premises" was insufficient because "the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant" was credible), *abrogated by Illinois v. Gates*, 462 U.S. 213 (1983); 290 U.S. 41, 44, 47 (1933) (explaining that warrant "to search a private dwelling" was improperly issued because

Regarding Griffin's claim that the information in the affidavit was stale or did not establish that he lived at the address when the offenses occurred or when the warrant was requested, we note that the affidavit specified that S.S. went to a forensic interview two days before the affidavit was prepared and stated in the interview that Griffin initiated a relationship with her in February 2012, which was two years and five months before the affidavit was prepared, and that the relationship lasted for two years. Further, the affidavit related that S.S. stated that Griffin gave her gifts, including money, a cell phone, and jewelry, and that they had sexual intercourse numerous times at various locations, including his home. Additionally, the

"facts or circumstances presented . . . under oath or affirmation" did not establish probable cause when affidavit simply stated that affiant had "cause to suspect and does believe that certain" illegal merchandise had been "deposited and contained within the premises of J. J. Nathanson").

In *Cassias v. State*, the Court of Criminal Appeals concluded that the "facts and circumstances presented in this affidavit are too disjointed and imprecise to warrant a man of reasonable caution in the belief that marihuana and cocaine would be found at 724 Del Mar Street" where the affidavit asserted that an informant saw the defendant in possession of marijuana and cocaine and that the affiant had "good reason to believe and do believe that said narcotic drug is now concealed" by the defendant at "724 Del Mar Street . . . , which said premises are in the possession and under control" of the defendant. 719 S.W.2d 585, 586-87, 590 (Tex. Crim. App. 1986). The affidavit also stated that surveillance had been set up, that activity had been observed "in the garage area," and that the affiant observed someone who "frequents the place on a daily basis" "carrying brick type packages believed to be marijuana." *Id.* at 587. The Court of Criminal Appeals observed that neither the drugs nor the defendant were "connected in any way with" the address listed in the affidavit, that the affidavit did not specify where surveillance was set up, and that the affidavit did not explain why the person observing someone carry a brick-like object believed the object was marijuana. *Id.* at 588, 589. In contrast here, the affidavit specifies what offenses are alleged to have occurred, states that the offenses occurred at Griffin's address, identifies S.S. as the source of the information, lists the address as 125 Lazy L Lane, and provides information from which the magistrate could have inferred how Officer Martinez learned the address of Griffin's home.

Finally, in *State v. Ozuna*, one of our sister courts of appeals determined that an affidavit was insufficient because the affidavit did not link the suspected heroin to the defendant's home and because it did not present any information regarding whether the informants that provided much of the information were reliable. 88 S.W.3d 307, 313 (Tex. App.—San Antonio 2002, pet. ref'd). Here, the affidavit specifies that the offenses occurred at Griffin's home, that S.S. was the source of much of the information in the affidavit, and that S.S. had been shown to be credible.

28

affidavit stated that S.S. spent the night at Griffin's home and described the residence. The affidavit also stated that S.S. described Griffin taking photographs of her while she was naked each time they had sexual intercourse, making a video recording of her during some of those encounters, and characterizing himself as an artist who enjoyed viewing the naked images of her.

As discussed earlier, the trial court determined that the magistrate could have reasonably inferred that Officer Martinez performed an investigation to verify that Griffin was currently living at 125 Lazy L Lane and that S.S.'s description of Griffin's home where she was assaulted matched the description given by Officer Martinez in the affidavit. Moreover, the trial court determined that the magistrate could have reasonably inferred that the affidavit described a "long-term" relationship involving "'grooming' behavior such as gift-giving," that evidence of "biological material" from the sexual encounters at Griffin's home could be present at the home, that the explicit photos and video recordings that Griffin took of S.S. during the sexual encounters were "keepsakes" that "would be located at [Griffin]'s residence," and that he would view those images "in the privacy of his own residence" on electronic devices. Further, the trial court determined that the magistrate could have reasonably concluded that people who possess child pornography "tend to retain the pornography for extended periods of time," that Griffin's "conduct was protracted and continuous," that the abuse ended only five months before the warrant was requested, and that evidence of the abuse would be present at Griffin's home.

These inferences are reasonable in light of the language of the affidavit, particularly the portion reciting facts "indicating activity of a protracted and continuous nature," meaning that the passage of time between when the abuse allegedly stopped and when the affidavit was requested became less significant. *See Ex parte Jones*, 473 S.W.3d 850, 856 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Moreover, "courts have repeatedly recognized that

29

in child pornography cases, collectors of child pornography tend to retain this material." *See id.* at 857; *see also United States v. Ricciardelli*, 998 F.2d 8, 12 n.4 (1st Cir. 1993) (noting that "[h]istory teaches that collectors [of child pornography] prefer not to dispose of their dross, typically retaining obscene materials for years"); *Morris v. State*, 62 S.W.3d 817, 823-24 (Tex. App.—Waco 2001, no pet.) (concluding that because affidavit indicated activity of continuous nature, magistrate could have reasonably inferred that defendant had possession of child pornography for substantial period of time). Moreover, as set out earlier, the magistrate could have reasonably inferred that S.S.'s description of Griffin's home matched Officer Martinez's recent observation of the exterior of the home, and the magistrate could have further inferred that Griffin had not moved since the abuse stopped and continued to reside at the address listed in the affidavit. In any event, given the type of conduct alleged, the magistrate could also have reasonably inferred that Griffin would have taken the evidence with him if he moved to a new home.

Given our standard of review and the preference afforded to searches authorized by the issuance of a warrant, we conclude that the affidavit contained sufficient information to provide the magistrate a substantial basis to conclude under the totality of the circumstances that probable cause existed that evidence of the offenses of sexual abuse of a child and possession of child pornography would be present at Griffin's home located at 125 Lazy L Lane when the warrant was requested. Accordingly, we conclude that the trial court did not abuse its discretion by denying Griffin's motion to suppress.

For all of these reasons, we overrule Griffin's final issue on appeal.

## CONCLUSION

Having overruled all of Griffin's issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   December 23, 2020

Do Not Publish